WARD, Judge.
Brothers Construction, Inc., as the successful bidder was awarded Contract I of the Jourdan Road Wharf and Transit Shed project by the Board of Commissioners of the Port of New Orleans (the Dock Board). Brothers filed this suit against the Dock Board to recover $75,000.00 Brothers had paid to a subcontractor on the project, but which it had not included in its bid to the Dock Board. The Trial Judge held that Brothers was entitled to reimbursement from the Dock Board for $75,000.00. We reverse that judgment.
The Dock Board’s bid package for the Jourdan Road project had designated the Vibroflotation Foundation Company of Pittsburgh, Pennsylvania as a closed specification subcontractor because of its unique process for reinforcing soil by placement of stone columns in the ground. This meant that, as a practical matter, only Vibroflotation could be used as a subcontractor for the soil reinforcement work. The bid package instructed each bidding prime contractor to “make his own arrangements with Vibroflotation Foundation Company for their expertise and services necessary in the performance of the work” and that “the Vibroflotation Company will furnish all supervision, labor, equipment, and related services necessary to do all soil reinforcement work ...”
The prime contractors were instructed to itemize Vibroflotation’s stone column foundation installation in Bid Items IB-15 and IB-16 on the bid form:
*323 Description
IB-15 Stone Col. Install. Cost as Guaranteed by Vibroflotation Fdn. Co. not to Exceed $10.85/lin.ft.
IB-16 Contractor’s Associated Cost of Stone Col. Install.
Approximate Quantity Unit Price
95,500 lin.ft. per lin.ft.
AS SPECIFIED LUMP SUM
The Dock Board relied upon Vibroflotation to inform the prospective bidders of the details of subcontract work and its costs. A few days before the bid date, Vibroflotation prepared and submitted to each prime contractor an identical proposal, based upon negotiations between Vibroflo-tation and the Dock Board during the development of the plans and specifications for the project. Each proposal contained Vibroflotation’s unit price for Bid Item 1-15 of $10.85 per linear foot of stone column installed plus a $75,000.00 “Lump Sum Mobilization” charge which could be placed in Item IB-16 as an associated cost. “Mobilization” is the moving of equipment to and from a job site, a fixed cost not contingent upon the number of linear feet of stone column foundation work.
The Dock Board gave no further information or instruction to the bidding contractors regarding the subcontract work. However, in its “Instructions to Bidders”, the bid package directed the contractors to contact the contract engineer firm or the Dock Board’s Engineering Design Division if more detailed information was needed after study of the plans and specifications. The Dock Board’s chief engineer testified at trial that the bid package was designed, consistent with the competition fostering purposes of the public bid law, to allow as much flexibility as possible in the negotiations between the prime contractors and Vibroflotation.
Brothers’ officers testified that they believed that the $75,000.00 mobilization charge proposed by Vibroflotation was not approved by the Dock Board because it was not expressly mentioned in the bid package. Brothers interpreted the $10.85 per linear foot cost cap in the Item IB-15 description to preclude the additional $75,-000.00 charge and perceived a conflict between the express terms of the bid package and Vibroflotation’s insistence on the mobilization charge. Since Vibroflotation had adjusted its charge to Brothers on a prior project, Brothers assumed that the charge on the Jourdan Road project was also open to negotiation. In a meeting with Vibroflo-tation Company representatives on the morning the bids were to be submitted, Brothers’ officers attempted to negotiate an adjustment in the $10.85 per foot cost or a waiver of the mobilization charge, but Vibroflotation refused to consider a change in its proposal, and no agreement was reached on the subcontract. Because of time limitations and fear of jeopardizing the competitiveness of its bid, Brothers did not contact the Dock Board to inquire about the apparent conflict and did not include the $75,000.00 in its bid. Brothers officers testified that they believed that their competitors also would view the $75,-000.00 mobilization charge as unauthorized and hence not include it in their bids. However, it was established at trial that each of the three other contractors followed Vibroflotation’s proposal and included the mobilization charge in its unsuccessful bid.
Bids on the project were opened on September 25, 1980, and Brothers’ bid of $2,998,835 was the low bid. On October 15, 1980, the project contract was executed between Brothers and the Dock Board. After negotiations between Brothers and Vibroflotation failed to resolve the issue of the mobilization charge, Brothers applied to the Dock Board for a change order, requesting an additional payment for the $75,000.00 required by Vibroflotation. The change order request, made on October 24, *324 1980, was Brothers’ first notification to the Dock Board that the mobilization charge had not been included in its bid and that the charge was in dispute. The Dock Board denied Brothers’ request for the additional money.
In order to fulfill the requirements of the prime contract with the Dock Board, Brothers entered into a contract with Vibroflotation which included the $75,000.00 charge. Brothers and Vibroflotation performed all work under their respective contracts and both were paid.
Brothers continued to contest the Dock Board’s refusal to reimburse it for the mobilization charge, leading to the filing of this suit in the Civil District Court for Orleans Parish. There, the Trial Judge found “unilateral error sufficient to abrogate the contract” and held that Brothers was entitled to the $75,000.00.
In its appeal from the Trial Court judgment, the Dock Board asserts that the Judge erred in rescinding the contract, arguing that there was no error sufficient to vitiate consent, and the error, if any, was not on a point which was a principal cause for making the contract. The Dock Board argues that the Trial Judge’s reformation of the contract was improper since there was no mutual error and that Brothers should be estopped from claiming the addition to the contract price since it failed to seek clarification of the bid package.
Brothers contends that monetary compensation was its principal cause for entering into the agreement, and the Trial Judge was correct in finding error as to this cause because Brothers relied upon the express terms of the bid package limiting Vibroflo-tation’s charge to $10.85 per linear foot of column and it was not bound to accept the representations of Vibroflotation regarding the mobilization charge.
The issue underlying the assertions and arguments of both parties is whether Brothers’ failure to include the $75,000.00 mobilization charge in its bid constitutes error sufficient to invalidate consent to the contract.
Louisiana Civil Code Article 1823 defines the error necessary to invalidate a contract:
Art. 1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself.
Brothers did not allege facts which would show error as to the motive, person, or subject matter of the contract. Brothers was apprised of all material facts before it submitted its bid. Brothers knew that it was contracting with the Board of Commissioners of the Port of New Orleans, and the bid package set forth the nature and scope of work to be performed, including the arrangements to be made with Vi-broflotation. Brothers did not deny that Vibroflotation informed its officers that the mobilization charge should be included in the bid.
Error which will destroy consent and invalidate a contract must concern so material a point that it is clear that consent would not have been given if the truth had been known. La.C.C. art. 1825. Here, the truth regarding the mobilization charge was readily available from the Dock Board, but Brothers’ officers made a strategic decision not to seek clarification of the matter for fear of being told to include the $75,000.00 charge. Brothers’ decision not to include the charge in its bid was predicated on the hope that, once Brothers had the contract, Vibroflotation would reduce or waive the mobilization charge or that the Dock Board would accept an additive change order.
That neither of these possibilities materialized indicates mistaken business judgment, not legal error. A contractor’s unfulfilled expectations of profit will not vitiate consent and invalidate a contract. If this were the case, no one would be legally bound to an unprofitable contract. Rather than unilateral error, we find there was a calculated refusal to clarify a minor ambiguity before submitting a bid, effectively securing the contract with the low bid while preserving a legal escape hatch to *325 permit payment in excess of the amount bid.
Similarly, we find no merit in Brothers’ assertion that the $75,000.00 charge, which amounted to a little more than 2.5 percent of the contract price, was the principal cause of its entering into the contract. Brothers did not believe the question regarding inclusion of the mobilization charge was of sufficient importance to require clarification before submission of its bid. Even after the bid was accepted, Brothers did not advise the Dock Board about its dispute with Vibroflotation’s charge. Apparently, Brothers’ officers did not think the disputed charge warranted discussion with the Dock Board until after the ink on the contract was dry. We find it incredible that a matter which Brothers was so reluctant to discuss or clarify could be the principal cause of its contract with the Dock Board.
Therefore, we find no basis for abrogating the contract and reverse the judgment of the Trial Court. All costs of this appeal to be paid by Brothers Construction, Inc.
REVERSED.